**ORIGINAL**

Mark Martel (State Bar No. 147970)
Attorney At Law
425 Sherman Ave. #330
Palo Alto, CA 94306
(650) 470-2650
Attorney for Cross-Defendants
Kids Connection, Inc.; Edward O. Mehrfar;
Alternative Capital Strategies; and Robert McNeil

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>FRED AND LINDA KOELLING<br><br>Debtors. | Case No. 04-46443-LT11<br><br>Chapter 11 |
| QMECT, INC., dba ELECTROCHEM, a California corporation, Fred Koelling, an individual, and Linda Koelling, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>Robert D. Judson, Jr., an individual; Janice H. Judson, an individual; Sierra Financial Group, Inc., a California Corporation; Burlingame Capita Partners II, Inc., a Delaware limited partnership; Burlingame Capital, LLC, a Delaware limited liability company; Burlingame Capital Management, LLC, a California limited liability company,<br><br>Defendants.<br><br>AND RELATED CROSS ACTION | Adv. Proc. No. 04-04366 AT<br><br>**OPPOSITION OF KIDS CONNECTION, EDWARD MEHRFAR, ALTERNATIVE CAPITAL STRATEGIES, AND ROBERT McNEIL TO MOTION TO REMAND**<br><br><br><br>Date: January 20, 2005<br>Time: 2:00 p.m.<br>Dept: Room 201<br>Judge: Hon. Leslie Tchaikovsky |

Case: 04-04366   Doc# 14   Filed: 01/14/05   Entered: 01/19/05 10:41:29   Page 1 of 16

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

QMECT Retains The Judsons To Restructure The Comerica Debt . . . . . . . . . . . . . . . 1

Kids Connection Loans $1.5 Million To QMECT . . . . . . . . . . . . . . . . . . . . . . . . 2

The Judsons' Burlingame Loan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

QMECT Retains Alternative Capital Strategies To Arrange Refinancing. . . . . . . . . . . . . 2

The QMECT Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Burlingame's Cross-Complaint In The QMECT Action . . . . . . . . . . . . . . . . . . . . . 3

The June 2003 Agreement Settling Part Of The QMECT Action . . . . . . . . . . . . . . . . . 3

QMECT's Partial Repayment of Kids Connection Loan With Stock . . . . . . . . . . . . . . . 4

Burlingame's Amended Cross-Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Burlingame Buys The Comerica Loan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Burlingame Files Suit Under The June 2003 Agreement As A Separate Action . . . . . . . . . . 4

A Missed Settlement Opportunity Leads To The QMECT Bankruptcy . . . . . . . . . . . . . . 4

Removal And Remand Of The Related QMECT And Burlingame Actions . . . . . . . . . . . . 5

Burlingame's Amended Complaint In This Case . . . . . . . . . . . . . . . . . . . . . . . . 5

The Koellings' Cross Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

The Present Bankruptcy Petition And Removal Of The QMECT And Burlingame Actions . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.    KIDS CONNECTION IS NOT LIABLE TO BURLINGAME. . . . . . . . . . . . . . . . 6

II.   REMAND WOULD INCREASE THE TIME AND EXPENSE NECESSARY TO
      RESOLVE THIS CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

A.    The Assigned Judge In This Court Is Far More Familiar With This Matter Than The San
      Mateo County Superior Court Judges Who Would Consider It Upon Remand. . . . . 7

B.    It Would Be Extremely Inefficient To Remand The Minor Claims Against ACS
      And Its Principal Edward Mehrfar To State Court. . . . . . . . . . . . . . . . . . . 7

Case: 04-04366    Doc #: 24    Filed: 01/14/05    Entered: 01/19/05 10:41:29    Page 2 of 16

C. Burlingame's Fraudulent Transfer Claim Against QMECT And Kids Connection Cannot Be Remanded Because It Is Part of The QMECT Bankruptcy. . . . . . . . . . . . . . . . 8

III. THE KOELLINGS HAVE NOT FAILED TO PROVIDE DISCOVERY. . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# INTRODUCTION

Cross-defendants Kids Connection, Inc.; Alternative Capital Strategies (ACS); Edward Mehrfar (principal of ACS); and Robert McNeil urge the Bankruptcy Court to retain jurisdiction over *QMECT v. Judson* action so that the entire matter may be resolved most efficiently and economically in one forum.

# FACTUAL BACKGROUND

## Overview

This case arises from a loan from Burlingame Capital to QMECT, Inc. dba Electrochem. Electrochem is a company in Union City which does electroplating for electronic and computer components. During the technology-sector boom in the mid-1990s, QMECT bought a new building to significantly expand its capacity. To refinance this expansion, QMECT borrowed several million dollars from Comerica Bank. Comerica required Fred Koelling and his wife Linda Koelling to personally guarantee QMECT's debt to Comerica. Linda Koelling's assets, include her ownership interest in "Kids Connection", a daycare center and private preschool/elementary school for grades K-5. Linda Koelling founded Kids Connection in 1988 and has been its administrator since then.

From the beginning, QMECT did not satisfy certain collateral requirements of at least one of the Comerica loans. Comerica threatened to foreclose on QMECT and the Koellings' personal guarantees, and pressured QMECT to obtain third-party refinancing. Comerica recommended that QMECT and the Koellings retain Robert and Janice Judson and their company Sierra Financial Group, Inc. ("Sierra") to obtain refinancing for QMECT.

## QMECT Retains The Judsons To Restructure The Comerica Debt

In November, 1999, QMECT retained Sierra to provide consulting services and help QMECT restructure and refinance its debt with Comerica. The Koellings allege that the Judsons did *not* attempt to renegotiate the Comerica debt, and did not take any position adverse to Comerica Bank in an attempt to restructure QMECT's debt in a way that would improve its financial position. Instead, the Judsons in 2000 formed their own investment company, Burlingame Capital Partners ("Burlingame") to provide financing to QMECT. At this time,

Plaintiffs' Motion for Leave to File Deposition

QMECT was experiencing severe financial difficulties due to the steep decline in the technology industry which began in approximately March 2000.

**Kids Connection Loans $1.5 Million To QMECT**

In June, 2001, QMECT borrowed $1.5 million from Kids Connection in order to relieve its financial difficulties.

**The Judsons' Burlingame Loan**

In September to November 2001, Burlingame lent QMECT approximately $2 million dollars at an annual interest rate of 22% (the "Burlingame Loan"). In connection with this loan, Burlingame required Fred and Linda Koelling to sign a personal guaranty of the debt. This personal guaranty expressly excludes the Koellings' ownership of Kids Connection.

By approximately September 2002, QMECT was unable to make its payment on the Burlingame Loan. In October 2002, Burlingame sent QMECT and the Koellings a notice of default on the Burlingame Loan; and demanded immediate payment of $2 million plus unpaid interest, late charges, and costs under the Koellings' personal guaranty. The Koellings did not and do not have the funds to make this payment.

**QMECT Retains Alternative Capital Strategies To Arrange Refinancing.**

In September 2002, QMECT retained a New York company called Alternative Capital Strategies (ACS) to help QMECT refinance its debt. *9-12-02 ACS-QMECT Services Agreement, Exh. 1.* ACS' Services Agreement contained a standard "non-circumvention" provision that prohibited ACS clients from directly contacting potential investors. *Id., ¶5, p. 5-6.* This provision was intended to prevent ACS's clients from hiring ACS, learning of potential investors through their relationship with ACS, then entering into transactions with those investors directly to avoid paying ACS' fees. This provision did not logically apply to Burlingame and the Judsons, with whom QMECT already had a contractual relationship when it retained ACS.

After QMECT retained ACS, ACS' principal Edward Mehrfar attempted to renegotiate QMECT's debt to Burlingame. Mr. Mehrfar acted as an intermediary between the parties. *See, e.g., Exhs. 3, 4.* However, he was unable to arrange for refinancing.

Plaintiffs' Motion for Leave to File Deposition

## The *QMECT* Action

QMECT made a major effort to develop options to restructure payment on the Burlingame Loan. The Judsons were not willing to discuss this unless the Koellings removed the Kids Connection "carve out" and agreed to other extremely onerous terms which would have resulted in Burlingame taking over QMECT. On October 23, 2002, QMECT dba Electrochem filed suit against the Judsons, Burlingame, Sierra, and related entities, alleging that these defendants had breached their agreements and fiduciary duties to act in QMECT's interest to obtain a restructuring of the Comerica debt and generally assist QMECT with its debt situation. The complaint also contained causes of action for fraud and misrepresentation. QMECT held off on serving the complaint for a number of months while it tried to persuade the Judsons to agree to a new payment plan on the Burlingame Loan. That effort was unsuccessful, however, and QMECT served the complaint some months after it was filed when the court ordered QMECT's attorney to either serve or dismiss the complaint.

## Burlingame's Cross-Complaint In The *QMECT* Action

In May 2003, Burlingame cross-complained against the Koellings and other individuals and entities, alleging *inter alia* that QMECT had defaulted on the Burlingame Loan, and that the Koellings had breached their personal guaranty of that loan. The cross-complaint also alleged that ACS and its principal Edward Mehrfar had tortiously interfered with Burlingame's contracts with QMECT by prohibiting QMECT from entering into further discussions with Burlingame.

## The June 2003 Agreement Settling Part Of The *QMECT* Action

In June 2003, Burlingame, QMECT, and the Koellings entered into an agreement to settle part of the QMECT lawsuit. *June 2003 Agreement, Exh. 5.* Under the June 2003 Agreement, Burlingame was allowed to bid unopposed to buy the Comerica Loan. Upon acquiring the Comerica Loan, Burlingame agreed to immediately release the Koellings' personal guaranties on the Comerica Loan. In exchange for this plan to release the Koellings from Comerica personal guaranties, the Koellings and QMECT dismissed their fraud claims in the QMECT action against Burlingame and the Judsons. The June 2003 Agreement later became the subject of a separate lawsuit filed by Burlingame.

Plaintiffs' Motion For Leave to File Deposition

## QMECT's Partial Repayment of Kids Connection Loan With Stock

In June 2003, QMECT repaid part of its $1.5 million debt to Kids Connection by issuing stock valued at $250,000 to Kids Connection. Kids Connection forgave $250,000 in debt in return for the stock. The $250,000 figure was based on a valuation of QMECT stock at approximately $50/share. This was equal to or greater than a fair market value for the stock. QMECT also issued shares to creditor Robert McNeil in June 2003 in partial repayment of debt.

QMECT's June 2003 issuance of new shares diluted the value of shares it had pledged to Burlingame to secure payment on a September, 2001 loan. The dilution reduced the value of the pledged shares from a majority interest in QMECT to a minority interest. However, after QMECT issued the additional shares, it proposed to Burlingame a plan to restore the value of the pledged shares to a 95% interest. Burlingame rejected this proposal, stating that it did not want to be a majority shareholder in QMECT in light of the company's financial difficulties.

## Burlingame's Amended Cross-Complaint

In September 2003, Burlingame amended its cross-complaint to allege that QMECT's transfer of stock to Kids Connection in partial repayment of its debt was a fraudulent transfer designed to harm Burlingame. Burlingame also alleged in its amended cross-complaint that Linda Koelling's employment agreement with Kids Connection was a fraudulent transfer designed to harm Burlingame.

## Burlingame Buys The Comerica Loan

Burlingame purchased the Comerica loan at a substantial discount in February 2004.

## Burlingame Files Suit Under The June 2003 Agreement As A Separate Action

On February 18, 2004, Burlingame filed a separate lawsuit ("the *Burlingame* action") seeking a declaratory judgment that the Koellings had breached the June 2003 Agreement, and that their personal guaranties on the Comerica Loan therefore remained in effect.

## A Missed Settlement Opportunity Leads To The QMECT Bankruptcy

In January, 2004, Burlingame gave notice that it would foreclose on QMECT's assets on February 26, 2004. On January 24, 2004, the parties conducted a long mediation of the case before Hon. Read Ambler (Ret.). At that mediation, the parties agreed on an outline of a

Plaintiffs' Motion For Leave To File Opposition

settlement that contained a fair amount of detail. Burlingame provided attorneys for QMECT and the Koellings with settlement papers late in the evening preceding the scheduled foreclosure sale of QMECT the next morning. Those settlement papers contained significant differences from the settlement outline agreed to at the mediation. Burlingame would not postpone the foreclosure sale to allow time to review, comment on, and amend the settlement papers. QMECT therefore filed for bankruptcy under Chapter 11 of the Bankruptcy Code on or about February 27, 2004.

**Removal And Remand Of The Related *QMECT* And *Burlingame* Actions**

In March 2004, QMECT and the Koellings removed the *QMECT* and *Burlingame* actions to the Bankruptcy Court. On June 17, 2004, the Bankruptcy Court remanded the *Burlingame* case and parts of the *QMECT* case. The Bankruptcy Court retained claims by and against QMECT, including Burlingame's fraudulent transfer claims against QMECT and Kids Connection.

**Burlingame's Amended Complaint In This Case**

On September 2, 2004, Burlingame served a First Amended Complaint in the *Burlingame* action, adding a claim for breach of the Comerica personal guaranties. The amended complaint contained a demand for over $2.5 million, plus interest, plus attorney's fees. *Id.* This demand was not in the original complaint, which sought only declaratory relief.

**The Koellings' Cross Complaint**

On October 1, 2004, the Koellings demurred in the *Burlingame* action. That demurrer was not heard before the Koellings' filed the present bankruptcy. The Koellings also cross-complained against Burlingame and against its principals Robert Judson and Janice Judson, neither of whom were named as plaintiffs in the original or amended complaints in the *Burlingame* action. The cross-complaint contains causes of action for breach of contract, fraud, intentional interference with prospective economic advantage, and declaratory relief. Burlingame and the Judsons had not yet answered the cross-complaint when the *Burlingame* action was removed to this court in December 2004.

Case: 04-04366    Doc# 14    Filed: 01/14/05    Entered: 01/19/05 10:41:29    Page 8 of 16

**The Present Bankruptcy Petition And Removal Of The *QMECT* And *Burlingame* Actions**

The Koellings filed for Bankruptcy under Chapter 11 on November 16, 2004. On or about December 3, 2004, they removed the *QMECT* and *Burlingame* cases to this court.

## ARGUMENT

### I. KIDS CONNECTION IS NOT LIABLE TO BURLINGAME.

The Judsons state in their motion to dismiss that the Koellings can pay what they owe the Judsons through Kids Connection's assets. This position ignores the fact that Kids Connection is a separate corporate entity. It is not party to any agreement with the Judsons or any of their Burlingame entities. Kids Connection does not owe money to the Judsons or their companies; and it has not guaranteed any debts to the Judsons. Kids Connection is a preschool and day care center founded and run by Linda Koelling. It is not part of the issues between QMECT and the Judsons, and its assets are not part of the bankruptcy estate in this matter.

As for the Koellings' personal assets, their ownership interest in Kids Connection was expressly exempted from their personal guaranty of QMECT's debt to Burlingame. And while the Koellings' personal guaranty of the Comerica loan did not exempt ownership in Kids Connection, those personal guarantees were extinguished when Burlingame acquired the Comerica loan in February 2004. The Judsons now claim that the Koellings' personal guarantees of the Comerica loan remain because Fred Koelling acted in "bad faith" under the June 2003 Agreement. There are no facts to support this assertion. Mr. Koelling took no action to cause the Comerica loan to be sold to any person or entity other than Burlingame during the 90-day period established under the June 2003 Agreement for the Judsons to bid unopposed on the loan. Moreover, even if Fred Koelling *had* done anything to interfere with the Judsons' efforts to acquire the Comerica loan, the Judsons could not have been damaged by Mr. Koelling's actions, since the Judsons did in fact obtain the Comerica loan (at a substantial discount).

## II. REMAND WOULD INCREASE THE TIME AND EXPENSE NECESSARY TO RESOLVE THIS CASE.

### A. The Assigned Judge In This Court Is Far More Familiar With This Matter Than The San Mateo County Superior Court Judges Who Would Consider It Upon Remand.

Burlingame argues in its motion to dismiss/remand that the San Mateo County Superior Court is already familiar with this matter, and that resolution would be most expeditious there. That is not correct. The motions in the Superior Court have been divided between two law and motion judges (Judge Mittlesteadt and Judge Freeman); the Presiding Judge (Judge Forcum); and other judges dealing with case management matters. Starting in January 2005, the Presiding Judge and law and motion judges have changed. Neither the current law and motion judge (Judge Foiles), nor the current Presiding Judge (Judge Miram) have heard any matters relating to the *QMECT* or *Burlingame* actions.

In contrast, one judge in this court has handled all matters related to transactions and issues between Burlingame/the Judsons and QMECT/the Koellings. Judge Tchaikovsky is therefore far more familiar with the facts and issues in this matter than any of the judges in the Superior Court.

### B. It Would Be Extremely Inefficient To Remand The Minor Claims Against ACS And Its Principal Edward Mehrfar To State Court.

ACS is not a bankruptcy debtor or a transferee of an allegedly fraudulent transfer of QMECT stock. However, remanding the claims against Mehrfar and ACS to the state court.would needlessly increase the cost of resolving this matter. Burlingame's claims against Mehrfar/ACS represent a tiny fraction of the issues between QMECT/the Koellings and Burlingame/the Judsons. However, it will be necessary to explain the history of QMECT's financial situation; its loans and dealings with Comerica; and the history of dealings and transactions between QMECT and the Koellings, and Burlingame and the Judsons in order to establish the context of Burlingame's claims against Mehrfar/ACS. This will all be pure duplication of the work that will have to be done in the Bankruptcy Court on the claims between the Koellings and the Judsons -- and duplication of the work that has been and will be done in the QMECT bankruptcy. All the witnesses and evidence needed to litigate the claims against ACS

will also duplicate evidence and witnesses that will be relied upon in the Koelling and QMECT bankruptcies. Fred Koelling would certainly have to appear in state court litigation against ACS, diverting his attention from his present bankruptcy and the QMECT bankruptcy; not to mention his continuing responsibilities of operating QMECT/Electrochem. In addition, QMECT will have to pay the cost of a duplicative state court litigation against ACS, since QMECT must indemnify ACS under the QMECT-ACS Services Agreement. *ACS-QMECT Services Agreement, Exh. 1, ¶4, p. 5; Supplemental ACS-QMECT Services Agreement, Exh. 2, ¶4, p. 2.*

It would be far more efficient to resolve Burlingame's claims against ACS as part of the QMECT and Koelling bankruptcies and related adversary proceedings. Since the necessary background has already been before this Court as part of the QMECT bankruptcy and related adversary proceedings, resolving the claims against ACS through the Bankruptcy Court would add little to the proceedings here.

Burlingame claims that there is a March, 2005 trial date in the *QMECT* action, which includes ACS as a cross-defendant. However, that trial date was vacated by the Koellings' bankruptcy filing. The claims against Mehrfar and ACS would therefore be resolved more quickly, as well as more economically, in the bankruptcy court.

**C.  Burlingame's Fraudulent Transfer Claim Against QMECT And Kids Connection Cannot Be Remanded Because It Is Part of The QMECT Bankruptcy.**

The *QMECT* action was originally removed to this Court in March 2004. Part of the case was remanded to the state court in June 2004, but claims by and against QMECT -- including the claim that QMECT fraudulently transferred stock to Kids Connection -- was *not* remanded. Burlingame's fraudulent transfer claims have remained as part of the QMECT bankruptcy.

**III.  THE KOELLINGS HAVE NOT FAILED TO PROVIDE DISCOVERY.**

Burlingame would have this Court believe that Mr. and Mrs. Koelling refused to give dates for depositions; failed to appear for depositions; finally appeared just one time and then unilaterally terminated their depositions. These statements and suggestions are completely untrue. Mrs. Koelling appeared for deposition four times. She first appeared for deposition on February 19. *2-19-04 Transcript, Exh. 15.* Burlingame's attorneys *chose* not to proceed with the

Case: 04-04366    Doc# 14    Filed: 01/14/05    Entered: 01/19/05 10:41:29    Page 11 of 16

deposition. She was not deposed within the following week because the parties were focused exclusively on mediation. When the mediation did not result in a settlement and QMECT was forced to declare bankruptcy, Mrs. Koelling's deposition in this action was not possible because the case was removed to the Bankruptcy Court. However, Burlingame's lead attorney in this case did depose Mrs. Koelling in the bankruptcy action and related adversary proceeding against Burlingame. *3-20-04 Transcript, Exh. 18.* Burlingame later requested and obtained opposing counsel's agreement to use that deposition as part of the state court discovery. *9-28-04 Transcript, Exh. 36, 226:20-227:12; 251:16-22.*

Mrs. Koelling appeared for deposition a *third* time on July 20. *7-28-04 Transcript, Exh. 28.* She did *not* "terminate" her deposition after two hours, as Burlingame has told the Court. First, Mrs. Koelling offered to start her deposition at 10:00 a.m. -- making herself available for 6 hours (less any breaks). *Exh. 26.* However, Burlingame's counsel directed her to appear at 1:00 p.m., not 10:00 a.m. *Id.* Second, Mrs. Koelling did not "terminate" the deposition. Her attorney informed Burlingame by phone and by e-mail the day before the deposition that Mrs. Koelling had a city council meeting at 5:00 p.m. and would have to leave her deposition for the day between 3:30 and 4:00 p.m.[1] *Exh. 27.* Mr. Martel also wrote opposing counsel at that time that if Burlingame did not conclude Mrs. Koelling's deposition on July 20, they could resume it on August 5 or August 6. *Id.* In addition, the deposition did not end on July 20 with Mrs. Koelling saying "I'm leaving" and walking out, as Burlingame would like the court to believe. At about 3:30 p.m., defense counsel Robert Moore stated on his own initiative "you have to leave now", since he had been informed of Mrs. Koelling's City Council meeting. *Exh. 28, 101:1-6.*

About one month after Mrs. Koelling's July 20 session, Burlingame requested additional dates to continue deposing Mrs. Koelling. Mrs. Koelling's attorney responded within a few days with four additional dates in late September for a third deposition session (and a fourth appearance) for Mrs. Koelling. *Exhs. 29-32.* These were the earliest dates of availability for Mrs. Koelling and her attorney, partly because of Mr. Martel's schedule. *Exh. 32.* Mrs.

[1] Mrs. Koelling is a member of the Foster City City Council

Plaintiffs' Motion For Leave To File Opposition

Koelling did appear a fourth time for deposition on September 28, and her deposition was concluded at that time. *9-28-04 Transcript, Exh. 36.*

It is true that Mrs. Koelling and/or her attorneys were not available on a number of dates on which Burlingame wanted to depose her. That is common in litigation. However, her attorneys offered dates of availability for Mrs. Koelling on numerous occasions, and offered 17 different dates for her deposition. *See, Exhs.* 6, 11, 20, 21, 27, 32, 34.

Burlingame tells the Court in its moving papers that they noticed depositions for Kids Connection and Linda Koellings deposition for January 21 and 22; that their attorney sent a letter stating they would not appear for "their depositions", that the Koellings "failed to provide alternate dates for their depositions"; and then "failed to appear for a completed deposition within 10 days of February 20, as ordered by the Court. *Burlingame M.P.A. re. Motion to Dismiss/Remand, 15:16-25.*

This description of events is completely misleading. The Koellings' attorneys did not write that their clients would not appear for "their depositions"; they wrote to Burlingame's attorneys stating that they had schedule conflicts with the dates noticed. *Exh. 6.* And it is misleading to characterize the response of the Koellings' attorneys as "failing to provide alternate dates for their depositions". The Koellings' attorneys asked opposing counsel to confer about deposition schedules, and Burlingame's attorneys refused to do so. *Id.; Martel Dec., ¶8.* Instead, they insisted on proceeding with the depositions on the dates they had noticed, despite being informed that opposing counsel had conflicts with those dates. This forced plaintiffs/cross-defendants to file a motion to quash the deposition notices. Defendants moved to compel the depositions. The court issued a compromise ruling, ordering the depositions to proceed at "mutually agreeable times" within 10 days. *Minute Order, Exh. 14.*

Burlingame's statement that the Koellings and Kids Connection "failed to appear for a completed deposition within 10 days of February 20, 2004 as ordered" is also highly misleading, because it omits several important facts. First, Mrs. Koelling appeared for deposition on February 19, before the court issued its tentative ruling on defendants' motion to compel and plaintiffs/cross-defendants' motion to quash the January 21, 22, and 28 deposition notices.

Case: 04-04266   Doc #: 24   Filed: 01/14/05   Entered: 01/19/05 10:41:29   Page 13 of 16

Moreover, Mrs. Koelling did not "complete" her deposition on February 19 was that Burlingame's counsel *chose* not to proceed with her deposition -- opting instead to have her wait in their office the whole day while they discussed settlement with plaintiffs' counsel. *Martel Dec., ¶17.*

Second, Burlingame does not reveal that it did not pursue any depositions in the 10 days after Mrs. Koelling first appeared for her deposition. The parties focused exclusively during that time on mediation and settlement. *Martel Dec., ¶20.* It was not until March 1 -- 10 days after the court's order -- that defendants pursued depositions. *Id.; Exh. 16.* By that time, QMECT had filed for bankruptcy, and proceedings in the case had been stayed. The Koellings did thereafter appear for deposition under the auspices of the Bankruptcy Court. *Exhs. 23, 37.*

As for Fred Koelling, Burlingame suggests that he appeared on one occasion, and left under a pretense. *Burlingame Motion to Dismiss/Remand, 16:8-11.* This is again completely misleading. Burlingame deposed Mr. Koelling on *nine* different dates in 2004 -- July 13, 19, 20, August 25, September 23, 27, and three different dates in the bankruptcy proceedings. Cover pages from eight of those dates are attached to the accompanying attorney declaration as Exhibit 37. Mr. Koelling did interrupt his deposition at one of his nine appearances, because of a real medical emergency.

With respect to document production, the Koellings and ACS have provided an enormous amount of documents in response to the hundreds and hundreds of requests propounded by Burlingame in its scorched-earth approach to litigation. There have been delays in producing documents -- not because the Koellings or ACS has sought to conceal information, but because the Koellings simply could not afford the enormous amount of attorney time necessary to respond to Burlingame's avalanche of discovery requests in the state court actions within the timeframe Burlingame demanded. Nevertheless, the Koellings and ACS have been far more forthcoming in responding to discovery requests than has Burlingame.

Case: 04-04366   Doc #: 14   Filed: 01/14/05   Entered: 01/19/05 10:41:29   Page 14 of 16

## CONCLUSION

For the foregoing reasons, Burlingame's motion to remand should be denied.

Dated: January 13, 2005

_MARK MARTEL_

Mark Martel
Attorney for Cross-Defendants
Kids Connection, Inc.; Alternative Capital Strategies
Edward Mehrfar; and Robert Mcneil

# PROOF OF SERVICE

I am a resident of the United States and I reside in the county of San Mateo. I am over the age of eighteen years and not a party to this action. My business address is 425 Sherman Avenue, Suite 330. Palo Alto, CA 94306. On January 13, 2005 I served the following documents:

**Opposition Of Kids Connection, Edward Mehrfar, Alternative Capital Strategies, And Robert Mcneil To Motion To Remand**

**Declaration Of Mark Martel In Support Of Opposition Of Kids Connection, Edward Mehrfar, Alternative Capital Strategies, And Robert Mcneil To Motion To Remand**

by depositing the documents in Federal Express for overnight delivery, addressed as follows:

Robert R. Moore
Allen, Matkins, Leck. Gamble & Mallory LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111

Tobias S. Keller
Pachulski, Stang, Ziehl, Young, Jones & Weintraub, P.C.
Three Embarcadero Center, Suite 1020
San Francisco, CA 94111

Eric Nyberg
Kornfield, Paul & Nyberg, PC
1999 Harrison Street, Suite 2675
Oakland, CA 94612

Paul Manasian
Manasian & Rougeau
400 Montgomery Street, #1000
San Francisco, CA 94104

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Palo Alto, California, on January 13, 2005.

_____
Ximena Martel